**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| DEBRA GALE, | ) | NO. CV 15-8960-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | **AND ORDER OF REMAND** |
| Defendant. | ) ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on November 17, 2015, seeking review of the Commissioner's denial of disability benefits. The parties filed a consent to proceed before a United States Magistrate Judge on December 30, 2015. Plaintiff filed a motion for summary judgment on

October 19, 2016.  Defendant filed a "Memorandum in Support of Defendant's Answer," which the Court construes as Defendant's cross-motion for summary judgment, on November 14, 2016.  The Court has taken both motions under submission without oral argument.  See L.R. 7-15; "Order," filed November 23, 2015.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff asserts disability since October 10, 2010, based in part on an alleged "severe psychotic disorder with documented auditory hallucinations, paranoia, and other indicia of psychosis" (including visual hallucinations) and "chronic major depression" (Administrative Record ("A.R.") 39, 48-50, 52, 161-69, 190).  Plaintiff admits she abused cocaine until December 24, 2011, and also admits to a history of alcohol abuse (A.R. 39, 47).  At an administrative hearing on November 21, 2013, Plaintiff's counsel said Plaintiff "still drinks alcohol" but "doesn't abuse it" (A.R. 39).  Plaintiff said she stopped alcohol "abuse" approximately one month before the hearing (A.R. 47; but see A.R. 61-62 (Plaintiff testified that she drinks "once in a blue moon" and last drank a 40-ounce beer two weeks before the hearing, and later testified that her last drink was a couple of days or one week before the hearing)).

An Administrative Law Judge ("ALJ") found that Plaintiff has severe mental depression, alcoholism and drug dependence (A.R. 23).  The ALJ also determined, however, that Plaintiff retains the residual functional capacity to perform work at all exertional levels, limited only by a preclusion from work requiring understanding, remembering

2

and carrying out detailed or complex tasks (A.R. 26-29 (relying on non-examining state agency physician's opinion at A.R. 85-86, and non-examining state agency psychologist's opinion at A.R. 93-97 for mental limitations)). This residual functional capacity contradicts the opinions of Plaintiff's treating psychiatrist, Dr. Thomas Hoffman – the only treating or examining medical source to opine on Plaintiff's mental limitations. See A.R. 288-93, 360-64 (Dr. Hoffman's opinions). Dr. Hoffman opined, inter alia, that Plaintiff would miss four or more days of work per month due to her impairments, and that her "low intellectual capacity" likely would impair Plaintiff's ability to work regardless of substance abuse (A.R. 293, 364).

A vocational expert testified that a person having the residual functional capacity the ALJ found to exist could perform work as an industrial cleaner, hand packager, and assembler (A.R. 68).[1] The ALJ relied on the vocational expert's testimony to find Plaintiff not disabled (A.R. 30-31). The Appeals Council denied review after looking at additional evidence (reportedly a March 2015 document from Dr. Hoffman which is not part of the record) (A.R. 1-6).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the

---

[1] The vocational expert also testified that the maximum monthly rate of absenteeism for the jobs identified would be no more than two days per month (A.R. 71).

Administration used correct legal standards. See <u>Carmickle v. Commissioner</u>, 533 F.3d 1155, 1159 (9th Cir. 2008); <u>Hoopai v. Astrue</u>, 499 F.3d 1071, 1074 (9th Cir. 2007); see also <u>Brewes v. Commissioner</u>, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citation and quotations omitted); <u>see</u> <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006).

> If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. But the Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [administrative] conclusion.

<u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

**DISCUSSION**

On the present record, the Court is unable to conclude that the Administrations's decision is supported by substantial evidence. Remand is appropriate.

///
///
///

4

**I.   Summary of the Records Regarding Plaintiff's Mental Health Treatment**

Plaintiff's mental health treatment records are lengthy and somewhat repetitious. Treating psychiatrist Dr. Thomas Hoffman provided a "Mental Impairment Questionnaire" dated August 3, 2012 (A.R. 288-93).[2] Dr. Hoffman had been treating Plaintiff every one to three months beginning July 2011 (A.R. 288; see also A.R. 320-32, 396-97 (Dr. Hoffman's treatment notes)). He diagnosed: (1) psychotic disorder, not otherwise specified; (2) depressive disorder, not otherwise specified; (3) cocaine dependence; (4) alcohol dependence; and (5) borderline intellectual functioning (A.R. 288). Dr. Hoffman assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 43, indicating "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)" (A.R. 288).[3] Dr. Hoffman reported that Plaintiff uses drugs (cocaine and alcohol) "at times" (A.R. 288). Dr. Hoffman noted that Plaintiff's medications (Sertraline (Zoloft) and Quietapine (Seroquel)) could cause drowsiness, but Plaintiff reported none and often complained she cannot sleep (A.R. 288). Plaintiff's prognosis was "poor" (A.R. 288).

---

[2]   The copy of the questionnaire provided to the Court is of poor quality and is very difficult to read. See A.R. 288-93.

[3]   Clinicians use the GAF scale to rate "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") 34 (4th Ed. 2000 (Text Revision)).

In the questionnaire, Dr. Hoffman made check marks denoting, inter alia, substance dependence, difficulty thinking or concentrating, and memory impairment, and elsewhere noted that Plaintiff's substance abuse contributes to her limitations (A.R. 289, 293). Dr. Hoffman opined that Plaintiff's low intellectual capacity, which had not been formally tested and was "estimated" (A.R. 288, 291), is "chronic" and likely would impair Plaintiff's ability to work "irregardless" of substance abuse (A.R. 293; see also A.R. 288 (Plaintiff's intellectual capacity reportedly contributes to "disability/poor adaptive functioning")). Dr. Hoffman indicated that Plaintiff would be "unable to meet competitive standards" for remembering work-like procedures, and for understanding, remembering, and carrying out detailed instructions or the stress of semiskilled or skilled work (A.R. 290-91). Dr. Hoffman indicated that Plaintiff would have "serious limitations" (but not preclusion) in her ability to understand, remember, and carry out short and simple instructions, maintain attention, maintain regular attendance, work with others without being unduly distracted, make simple work-related decisions, complete a normal work day or work week without interruptions, perform at a consistent pace, get along with coworkers, respond appropriately to changes in a routine work setting, deal with normal work stress, and set realistic goals or make plans independently of others (A.R. 290-91). Dr. Hoffman explained:

> Based on several meetings, [Plaintiff's] intellectual capacity seems fairly low; it seems unlikely that [Plaintiff] would be able to follow detailed (and sometimes even relatively simple) commands/instructions/procedures;

>        her IQ has not been formally tested and observations are
>        only gross estimations. . . .
>
>        Low intellectual capacity (possibly from birth; possibly due
>        to stroke/brain damage) affect her ability to concentrate
>        and make and follow through with plans, her thought is
>        observed to be concrete and simple; it seems unlikely that
>        she would be able to problem solve or follow through with
>        work related instructions at the level required to function
>        in the work place; symptoms/poor adaptive functioning are
>        likely impaired from exacerbation of mood episodes.

(A.R. 291).

Dr. Hoffman circled "marked" functional limitation in Plaintiff's ability to maintain concentration, persistence, or pace, and circled that Plaintiff would have one to two episodes of decompensation of at least a two week duration per year (A.R. 292). Dr. Hoffman opined that Plaintiff would miss four or more days of work per month (A.R. 293). Where the questionnaire asked if Plaintiff is a malingerer, Dr. Hoffman checked "no," but added, "cannot say for sure" (A.R. 293).[4]

---

[4] Dr. Hoffman provided a "Mental Residual Functional Capacity Questionnaire" dated September 3, 2013, which contains findings similar to those contained in the earlier questionnaire (A.R. 360-64). Dr. Hoffman again estimated borderline intellectual functioning with no formal testing, and assigned a GAF of 43 (A.R. 360 (noting that Plaintiff "demonstrates a below average to low intellectual capacity")). He reported "marginal" response to treatment (A.R. 360).

(continued...)

1      Dr. Hoffman's treatment notes suggest that Plaintiff's condition
2 may have been improving somewhat with treatment and medication. When
3 Plaintiff first saw Dr. Hoffman in July 2011 - during a time when she
4 admittedly was using cocaine and alcohol - Dr. Hoffman stated, <u>inter</u>
5 <u>alia</u>, that: (1) Plaintiff felt her medications stabilize her mood,
6 keep her calm, and help her sleep, but she had "poor adherence" to
7 treatment (<u>i.e.</u>, she missed appointments and had not taken her
8 medications for the past month); (2) Plaintiff was "vague/
9 contradictory" concerning her alcohol and cocaine use, stating that
10 she does not drink when she takes her medication but has difficulty
11 recalling periods of sobriety; (3) Plaintiff planned to "obtain
12 sobriety" "on [her] own"; and (4) Plaintiff nonetheless reported
13 "doing real good" with no recent depressive symptoms, and a "generally

---

⁴(...continued)
Dr. Hoffman checked the same boxes as he did in the earlier questionnaire. <u>Compare</u> A.R. 289-91 with A.R. 361-63. Where asked to explain Plaintiff's limitations relating to unskilled work and to include medical/clinical findings to support the assessment, Dr. Hoffman answered, "Patient reports problems controlling her mood/irritability. She has difficulty dealing with people; she has cognitive deficits and problems with memory and concentration" (A.R. 362). Dr. Hoffman cited no tests to support the alleged cognitive deficits and problems with memory and concentration (A.R. 362). Where asked the same questions for semiskilled and skilled work, Dr. Hoffman answered similarly to what he wrote in the earlier questionnaire, referring to Plaintiff's allegedly low intellectual capacity and memory, concentration and executive functioning problems. <u>See</u> A.R. 363; <u>compare</u> A.R. 291 (answer quoted above).

Dr. Hoffman again opined that Plaintiff would miss more than four days of work per month (A.R. 364). Dr. Hoffman indicated without qualification that Plaintiff was not a malingerer (A.R. 364; <u>compare</u> A.R. 293 (qualifying answer)). Dr. Hoffman opined that Plaintiff would "remain low functioning even with sobriety" and explained that Plaintiff reported over one year of sobriety yet her deficits and poor functioning persist (A.R. 364).

stable" mood (A.R. 331). Reportedly, Plaintiff's speech was at a normal rate and volume, her mood was "good," her affect full/ euthymic/stable/well-related, her thought processes were linear/ logical/concrete, and her insight and judgment were "fair" (A.R. 331). Dr. Hoffman did note to "r/o" (rule out) borderline intellectual functioning; Plaintiff reported attending special education (A.R. 331).[5] Dr. Hoffman continued Plaintiff's Seroquel and Zoloft (A.R. 331).

In September 2011, Plaintiff reported no recent mood problems and said her medications were helping her (A.R. 330). Her mood apparently was unchanged from July (A.R. 330). According to this treatment record, Plaintiff was calm, interactive, euthymic, mostly logical but fairly concrete, and had a "fair" level of insight (A.R. 330). Plaintiff reportedly had not used cocaine in "months" and drank every two months (A.R. 330; but see A.R. 328 (Plaintiff admitting that she used cocaine until December 24, 2011)). Plaintiff evidently was not interested in drug or alcohol treatment, saying that she was "cutting it out and can do this on [her] own" (A.R. 330). Dr. Hoffman continued Plaintiff's medications (A.R. 330).

In December 2011, Plaintiff admitted that she was still using cocaine, which Dr. Hoffman stated "may be [the] cause of mood problems or [at] least contribute," but Plaintiff's mood and behavior appeared stable (A.R. 329). Again, she reportedly was calm, interactive,

---

[5] In every available treatment note except the last one, Dr. Hoffman indicated a need to rule out borderline intellectual functioning. See A.R. 321-31, 396-97.

pleasant, with good eye contact, normal rate and volume of speech, "alright" mood, full/euthymic affect, and linear thought processes (A.R. 329). Dr. Hoffman continued Plaintiff's medications (A.R. 329).

In early March 2012, Plaintiff reportedly had been sober for the past three months (since December 24, 2011) - her longest period of sobriety since her teens (A.R. 328). She was attending Alcoholics Anonymous occasionally (A.R. 328). Dr. Hoffman stated that Plaintiff's mood and behavior appeared stable (A.R. 328). She reportedly was calm, pleasant, interactive and euthymic, with stable affect and linear thought processes (A.R. 328). Dr. Hoffman added Trazodone to Plaintiff's medications (A.R. 328).

Plaintiff returned later in March 2012, complaining that her medications were not working and that she was depressed (A.R. 327). She was "most bothered" by poor sleep (A.R. 327). She apparently was calm and interactive, "depressed," with a calm and stable affect and with linear thought processes (A.R. 327). Her plans appeared logical/reasonable and she supposedly was committed to maintaining her sobriety (A.R. 327). Dr. Hoffman increased Plaintiff's Seroquel and Zoloft, discontinued Trazodone, and added Benadryl (A.R. 327).

In April 2012, Plaintiff reported that she felt less depressed with the medication adjustments, but was still sleeping poorly and was hearing voices ("random comments/commands") weekly (A.R. 326). Plaintiff apparently was calm and interactive, with "fair" mood, stable and euthymic affect, and linear thought processes (A.R. 326). Reportedly, her plans were logical/reasonable, and she was committed

to her sobriety (A.R. 326). Dr. Hoffman assessed Plaintiff's mood as stable and improving, but her poor sleep was only partially helped by medications (A.R. 326). Plaintiff's auditory hallucinations were "likely [secondary to] past prolonged/heavy substance abuse" (A.R. 326). Dr. Hoffman increased Plaintiff's Seroquel (A.R. 326).

In July 2012, Plaintiff reported that she had felt more depressed lately with sad mood and poor concentration, and had occasional suicidal ideation and auditory hallucinations (A.R. 326). Plaintiff admitted that she was taking her medication only sporadically (A.R. 325). She also "claim[ed] sobriety" (A.R. 325). Reportedly, she was calm, interactive, "depressed," with stable/euthymic affect, and had linear but concrete thought processes (A.R. 325). There was no observable psychosis (A.R. 325). Plaintiff's plans appeared logical/reasonable and she remained committed to sobriety (A.R. 325). Dr. Hoffman continued Plaintiff's medications (A.R. 325). Dr. Hoffman annotated the treatment note, stating that on August 3, 2012, he completed and forwarded the "Mental Impairment Questionnaire" to Plaintiff's case manager per Plaintiff's request (A.R. 325).

In August 2012, Plaintiff reported occasional transient low moods and anxiety, but her medications apparently were improving her symptoms and leaving her "calmer" (A.R. 324). Plaintiff evidently was calm, interactive and euthymic, with stable affect and linear thought processes (A.R. 324). She claimed that she was using no drugs or alcohol (A.R. 324). Dr. Hoffman continued Plaintiff's medications (A.R. 324).
///

1    In October 2012, Plaintiff reported some attenuated auditory
2 hallucinations, which Dr. Hoffman again noted were a "likely
3 persisting effect from years of drug abuse," but also reported
4 improvement with treatment (A.R. 323). Plaintiff said she could
5 ignore the voices and said the voices were infrequent with medication
6 (A.R. 323). Plaintiff was doing "fair," was unhappy with her housing,
7 and had no persisting depression (A.R. 323). Plaintiff evidently was
8 calm, pleasant, interactive and euthymic, with stable affect and
9 linear thought processes (A.R. 323). Plaintiff reported that she had
10 not used drugs or alcohol since December (A.R. 323). Dr. Hoffman
11 continued Plaintiff's medications (A.R. 323).

13    In December 2012, Plaintiff reported she was "doing alright," and
14 felt that her medications were improving her symptoms (A.R. 321). She
15 apparently had not had any recent auditory hallucinations (A.R. 321).
16 Plaintiff evidently was calm, interactive and euthymic, with stable
17 affect and linear thought processes (A.R. 321). Plaintiff claimed
18 that she was sober (A.R. 321). Dr. Hoffman continued Plaintiff's
19 medications (A.R. 321).

21    In March 2013, Plaintiff reported that she had been sober for
22 over a year (A.R. 320). She supposedly was doing well with no recent
23 auditory hallucinations, but she said she still had worries about her
24 finances and housing (A.R. 320). She apparently felt that her
25 medications improved her mood, irritability, auditory hallucinations,
26 and sleep with no reported side effects (A.R. 320 (noting "marked
27 improvement" with treatment)). Reportedly, Plaintiff was calm,
28 interactive and euthymic, with stable affect and linear thought

processes (A.R. 320). Dr. Hoffman continued Plaintiff's medications (A.R. 320).

In May 2013, Plaintiff reported her medications had been stolen and she had been without them for a month (A.R. 397). She said she was sleeping poorly and experiencing occasional auditory hallucinations, which she thought "were pretty much gone before when taking meds" (A.R. 397). She claimed to be maintaining her sobriety (A.R. 397). Plaintiff evidently was calm, interactive and euthymic, with full/stable affect and linear thought processes (A.R. 397). Dr. Hoffman said Plaintiff's mood and behavior appeared stable with no complaints, even though Plaintiff had not taken her medication, and Dr. Hoffman also said that Plaintiff's auditory hallucinations were under "good control" with medications (A.R. 397). Dr. Hoffman continued Plaintiff's medications (A.R. 397).

In August 2013, Plaintiff reported being more anxious/irritable the past week because she went to Fresno to visit family and ran out of medications (A.R. 396). She said she feels "good" when she takes her medications and still hears occasional comments/commands even with medications, but she feels she can ignore them (A.R. 396). She claimed to be maintaining her sobriety (A.R. 396). Reportedly, Plaintiff was calm, interactive and euthymic, with constricted/stable affect, normal speech, and linear thought processes (A.R. 396). Her mood and behavior appeared stable, she had "significant improvement" in her auditory hallucinations with medications, and her reality testing was intact (A.R. 396). Dr. Hoffman indicated "likely borderline intellectual functioning" (A.R. 396). Dr. Hoffman

continued Plaintiff's medications (A.R. 396). Dr. Hoffman annotated the note, stating that on September 3, 2013, he reviewed, completed and forwarded a mental health questionnaire to Plaintiff's case manager per Plaintiff's request (A.R. 396).

## II. The ALJ Materially Erred in the ALJ's Evaluation of the Medical Evidence.

The ALJ relied on the opinions of the non-examining state agency physician and non-examining state agency psychologist in determining Plaintiff's mental residual functional capacity (A.R. 29 (citing A.R. 80-86 (initial disability determination) and A.R. 87-99 (reconsideration disability determination)). On initial review, the state agency physician had no medical records to consider and therefore found no disability as of December 21, 2012 (A.R. 86).[6] On reconsideration, a state agency psychologist reviewed Dr. Hoffman's records including the Mental Impairment Questionnaire dated August 3, 2012, which the psychologist stated was "difficult to read" (A.R. 93 (citing, inter alia, A.R. 288-93)). The state agency psychologist opined that Plaintiff would have sustained concentration and persistence limitations in that she assertedly would have moderate limitations in her abilities to: (1) maintain attention and concentration for extended periods; and (2) complete a normal work day

---

[6] It appears that the Administration had requested Plaintiff's medical records from an attorney who was not then representing Plaintiff. See A.R. 83-85 (detailing attempts to obtain Plaintiff's medical records from attorney Norman J. Homen); see also A.R. 101 (Appointment of Representative form for Homen dated April 17, 2012); A.R. 115 (Appointment of Representative form for George Aaron dated June 30, 2012).

1 or work week without interruption from psychologically based symptoms,
2 and to perform at a consistent pace without an unreasonable number of
3 rest periods (A.R. 97). Nevertheless, the psychologist concluded that
4 these limitations "do not preclude [Plaintiff] from performing the
5 basic mental demands of competitive work on a [regular] basis" (A.R.
6 97).

8     The ALJ erred by relying on the non-examining state agency
9 psychologist to determine Plaintiff's mental residual functional
10 capacity. The law generally requires that the opinion of a treating
11 or examining physician receive more weight than the opinion of a non-
12 examining physician. See Andrews v. Shalala, 53 F.3d 1035, 1040-41
13 (9th Cir. 1995). "The opinion of a nonexamining physician cannot by
14 itself constitute substantial evidence that justifies the rejection of
15 the opinion of either an examining physician or a treating physician."
16 Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995) (emphasis in
17 original); see also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007)
18 ("When [a nontreating] physician relies on the same clinical findings
19 as a treating physician, but differs only in his or her conclusions,
20 the conclusions of the [nontreating] physician are not 'substantial
21 evidence.'"); Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir.
22 1990) ("The nonexamining physicians' conclusion, with nothing more,
23 does not constitute substantial evidence, particularly in view of the
24 conflicting observations, opinions, and conclusions of an examining
25 physician"). Here, the non-examining state agency psychologist relied
26 on Dr. Hoffman's treatment notes (on which Dr. Hoffman based his
27 opinions) (A.R. 93-94). Because the non-examining state agency
28 psychologist relied on the same evidence to reach different opinions

than the opinions reached by Plaintiff's treating psychiatrist, the non-examining psychologist's opinions could not furnish substantial evidence to support the ALJ's decision. See id.

**III. Remand is Appropriate.**

Remand is appropriate because the circumstances of this case suggest that further administrative review could remedy the ALJ's errors. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); see also INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in rare circumstances); Treichler v. Commissioner, 775 F.3d 1090, 1101 (9th Cir. 2014) (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014) (court will credit-as-true medical opinion evidence only where, inter alia, "the record has been fully developed and further administrative proceedings would serve no useful purpose"); Harman v. Apfel, 211 F.3d 1172, 1180-81 (9th Cir.), cert. denied, 531 U.S. 1038 (2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record"). There remain significant unanswered questions in the present record. For instance, it is not clear whether Dr. Hoffman would find the same functional limitations absent drug or alcohol use.

On remand the ALJ may want to reconsider whether to order an examination and evaluation of Plaintiff by a consultative psychiatrist

16

or psychologist. See Reed v. Massanari, 270 F.3d 838, 843 (9th Cir. 2001) (where available medical evidence is insufficient to determine the severity of the claimant's impairment, the ALJ should order a consultative examination by a specialist).[7]

**CONCLUSION**

For all of the foregoing reasons, Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: January 6, 2017.

/s/
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[7] The Court has not reached any issue regarding the ALJ's rejection of Dr. Hoffman's opinions, except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that [Plaintiff] is in fact disabled." See Garrison v. Colvin, 759 F.3d at 1021.